**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PATRICIA DURBIN, )<br>　　　　Plaintiff, )<br>　　v. )<br>GREAT BASIN PRIMARY CARE et al., )<br>　　　　Defendants. )<br>_____ | 3:11-cv-299-RCJ-WGC<br><br>**ORDER** |

Currently before the Court are a Motion to Compel Arbitration (#11); a Motion to Dismiss (#12); and a Motion for a More Definite Statement (#13). The Court heard oral argument on December 12, 2011.

**BACKGROUND**

**I.    Complaint**

On June 24, 2011, Plaintiff Patricia Durbin filed her First Amended Complaint ("FAC") against Defendants Great Basin Primary Care Association ("GBPCA"); Nevada Health Centers, Inc. ("NHCI"); Thomas G. Chase; Loren Ellery; Michael Rodolico; Liz Latham; Ken Richardson; Rose Yuhos; Dalene Altamirano; and Karen Ann Stitt (collectively "Defendants"). (FAC (#8) at 1). GBPCA was an organization that advocated to provide low cost health care to low-income individuals without health insurance. (*Id.* at 3). Chase, Ellery, Rodolico, Latham, Richardson, and Yuhos were GBPCA directors. (*Id.* at 2-3). Altamirano was the director of operations for GBPCA. (*Id.* at 3). Stitt was the former Chief Financial Officer ("CFO") of GBPCA. (*Id.*).

Plaintiff alleged the following in her complaint. (*Id.* at 3). In 1999, Roger Volker had

been the executive director of GBPCA. (*Id.*). He had been aware of Plaintiff's 1989 felony conviction for embezzlement. (*Id.* at 4). Plaintiff had been sentenced to five years of formal probation, but after being on probation and paying restitution for two years, her probation officer notified her that her sentence had been suspended. (*Id.*). Plaintiff had disclosed the conviction and probation suspension on her GBPCA employment application prior to being hired. (*Id.*). On April 15, 1999, Plaintiff began working for GBPCA as a Deputy Director. (*Id.*). In 2005, GBPCA promoted her to Executive Director. (*Id.*). Plaintiff signed an employment agreement for that position. (*Id.*). Stitt, the CFO, had been aware of the agreement. (*Id.*).

Plaintiff alleged that her employment agreement had been a contract of adhesion because it had been offered to her on a "take it or leave it" basis. (*Id.* at 5). Section V(B) of the agreement incorporated the GBPCA employee handbook into the agreement. (*Id.*). The handbook referenced the Family Medical Leave Act ("FMLA") "despite the fact that GBPCA [did] not employ enough people to otherwise meet the statutory qualifications to be regulated by the FMLA." (*Id.*). GBPCA had a practice of extending FMLA benefits to its employees. (*Id.*).

Plaintiff alleged that, in August 2010, she had been diagnosed with "a serious health condition for her chronic degenerative condition which required surgery and extensive post-operative recovery." (*Id.*). Plaintiff notified GBPCA of her health condition, including surgery and post-operative treatment, and informed GBPCA that she would "require reasonable accommodations during the time of her surgery and recovery in order to continue performing her job duties." (*Id.*). GBPCA did not provide Plaintiff with the necessary forms for FMLA leave and GBPCA denied her request for FMLA leave because the need for leave was "ignored." (*Id.* at 6).

Plaintiff alleged that, on September 17, 2010, Stitt, the former CFO of GBPCA, sent a letter to Rodolico alerting him to Plaintiff's "questionable behavior." (*Id.*). The letter contained a bullet point list of allegations directed at Plaintiff. (*Id.*). Stitt's letter stated that she was "not simply an angry former employee wanting to get back at the organization." (*Id.*). Stitt allegedly mentioned Plaintiff's prior conviction to Rodolico when she delivered the letter to him. (*Id.*).

Stitt also provided a copy of the letter to GBPCA's auditors. (*Id.*). Stitt's letter contained several misstatements that Stitt knew or should have known were false. (*Id.*). Stitt's letter was intended to disrupt Plaintiff's contract and to harm her reputation and career. (*Id.*).

Plaintiff alleged that, on October 7, 2010, Chase had contacted her while she was at home preparing for surgery. (*Id.*). Chase knew that Plaintiff was in pain and heavily medicated but he continued to carry on an investigative conversation regarding the Stitt letter. (*Id.*). Chase told Plaintiff that she had to go to the NHCI office and sign an authorization permitting the NHCI to obtain her consumer credit report as part of a background check. (*Id.* at 6-7).

Plaintiff alleged that, on October 15, 2010, Chase sent her a letter on behalf of the GBPCA Board of Directors notifying her that the Board of Directors had voted to place her on indefinite suspension from her duties as Executive Director, with pay, while she was being investigated. (*Id.*). However, Plaintiff never received any salary payments from GBPCA from that date. (*Id.*). The letter described two investigations, including a background investigation and an investigation into all of the issues raised by Stitt. (*Id.*). That letter was copied to Plaintiff's personnel file, Altamarino, Judy Corrado, the GBPCA Board, and a Jialynn Wang in the Health Resources and Services Administration ("HRSA"). (*Id.*). The letter was copied to Wang in order to prevent Plaintiff from working with Wang or HRSA in the future. (*Id.* at 8).

Plaintiff alleged that, on October 20, 2010, Chase called Plaintiff while she was in a medicated state and pressured Plaintiff to resign from GBPCA and harassed Plaintiff to prove her innocence and honesty as to the prior conviction. (*Id.*). This conversation caused Plaintiff extreme emotional distress. (*Id.*). On November 5, 2010, Chase sent Plaintiff a letter on NHCI letterhead on behalf of the GBPCA Board of Directors and threatened Plaintiff with further investigation if she failed to relinquish her contractual rights to compensation. (*Id.*). Chase harassed Plaintiff by trying to force her to relinquish her contract claims and any future causes of action against GBPCA in order to avoid disclosure and publication of "disgraceful" information. (*Id.*). On December 15, 2010, Plaintiff received a "Report and Recommendation to the Board of Directors Regarding Allegations Made Against Executive Director Patricia

Durbin." (*Id.*). The Board of Directors held a meeting and declared the office of Executive Director vacant and terminated Plaintiff's employment. (*Id.* at 9). Plaintiff exercised her right to appeal before the Board. (*Id.*). After Plaintiff's appeal hearing, the Board of Directors affirmed Plaintiff's termination. (*Id.*).

In her complaint, Plaintiff alleged fourteen causes of action: (1) interference with rights under the FMLA against GBPCA; (2) promissory estoppel against GBPCA; (3) breach of contract against GBPCA; (4) breach of the implied covenants of good faith and fair dealing (contractual breach) against GBPCA; (5) breach of the implied covenants of good faith and fair dealing (tortious breach) against GBPCA; (6) defamation per se against Stitt; (7) intentional infliction of emotion distress against Stitt, Chase, Rodolico, Ellery, Latham, Richardson, Yuhos, Altamirano, and GBPCA; (8) intentional interference with contractual relations against Stitt; (9) intentional interference with prospective economic advantage against all Defendants; (10) wrongful termination/breach of continued employment contract against Stitt, Chase, Rodolico, Ellery, Latham, Richardson, Yuhos, Altamirano, and GBPCA; (11) wrongful termination/bad faith discharge against Chase, Rodolico, Ellery, Latham, Richardson, Yuhos, Altamirano, and GBPCA; (12) wrongful termination/tortious discharge against Chase, Rodolico, Ellery, Latham, Richardson, Yuhos, Altamirano, and GBPCA; (13) Fair Credit Reporting Act violations against Chase, Rodolico, Ellery, Latham, Richardson, Yuhos, Altamirano, GBPCA, and NHCI; and (14) declaratory relief against GBPCA that the arbitration clause in the contract was not enforceable. (*Id.* at 11-17).

At oral argument, Plaintiff withdrew her FMLA claim.

**II.   Employment Agreement**

Plaintiff and GBPCA executed a five-page Employment Agreement on February 14, 2006, to contractually formalize the employment of Plaintiff as Executive Director of GBPCA. (Defs' Emp't Agreement (#11-1) at 2, 4; Pl's Emp't Agreement (#15-1) at 2).[1] Section VII of

---

[1] The copies of the Employment Agreement are identical with respect to the terms and provisions. However, Defendants provide the Court with an executed copy of the agreement while Plaintiff does not.

4

the Employment Agreement provided a provision for Termination of the Agreement–Termination for Cause. (Pl's Emp't Agreement (#15-1) at 3). Under termination for cause, the employer "may terminate this agreement for just cause . . . The Employee may appeal any final action of the Board of Directors by exercising the arbitration provision contained in paragraph VII of this document." (*Id.*). Section VIII of the Employment Agreement provided a provision for Arbitration. (*Id.* at 4). The arbitration provision stated:

> Any dispute or claim involving this agreement shall be settled by arbitration through a team of three (3) independent arbitrators (each party to select one, the third to be selected by mutual agreement of the first two arbitrators). These arbitrators shall operate under the rules of the American Arbitration Association. Any dispute or claim shall be deemed waived unless arbitration is demanded with ninety (90) days of the occurrence, giving rise to the dispute or claim. The arbitrators shall have no authority to change any provision of this agreement. The sole authority of the arbitrator shall be to interpret or apply the provision of this agreement. The decision of the arbitrators shall be final and binding and shall be the exclusive remedy for any alleged breach of the employment relationship. Judgment upon the award rendered by the arbitrator team may be entered in any court having jurisdiction.

(*Id.*).

## DISCUSSION

### I.  Motion to Compel Arbitration (#11)

Defendants move to compel Plaintiff to arbitrate her claims pursuant to the terms of the employment agreement. (Mot. to Compel (#11) at 2). Defendants argue that the arbitration clause is valid and the wrongful termination dispute is within the scope of the agreement. (*Id.* at 3). Defendants assert that the arbitration clause is neither procedurally nor substantively unconscionable. (*Id.* at 5-6). Defendants argue that the dispute is within the scope of the arbitration clause because the plain language of the clause broadly encompasses all employment-related claims. (*Id.* at 8).

In response, Plaintiff argues that the arbitration clause is procedurally unconscionable because the arbitration clause used complicated, incomplete, and misleading language that failed to inform Plaintiff of its legal consequences. (Resp. to Mot. to Compel (#14) at 5). Plaintiff interprets the clause to permit the arbitrators to hear disputes regarding GBPCA providing the contract to Plaintiff and the legal effect of providing the contract to her. (*Id.*).

5

She also asserts that GBPCA did not provide her with a copy of the American Arbitration Association ("AAA") rules and, therefore, she did not expect to waive her jury rights or know that arbitration would cost more than litigation. (*Id.* at 6). She argues that the employment agreement is an adhesion contract. (*Id.*). Plaintiff contends that the arbitration clause is substantively unconscionable because the clause did not tell her that she was waiving a right to a jury trial, the confidentiality provision in the AAA rules weighed heavily in favor of GBPCA, and she might have to pay half of the arbitration fees. (*Id.* at 8-10). Plaintiff asserts that the arbitration clause does not govern the dispute in her complaint because several of her claims do not involve the employment agreement. (*Id.* at 11).

In reply, Defendants argue that Plaintiff requested the employment agreement and assert that Plaintiff drafted the agreement. (Reply to Mot. to Compel (#17) at 3). They assert that because Plaintiff drafted the agreement, the agreement must be construed against her and the arbitration clause should be enforced. (*Id.*). They argue that the employment agreement is not an adhesion contract because it is not for the sale of goods or services. (*Id.* at 6). They contend that Plaintiff used the NHCI employment contract as a template to draft her own employment agreement. (*Id.*).

On a motion to compel arbitration, a court is limited to considering whether the arbitration clause in the agreement is unconscionable. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006). Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In analyzing whether an arbitration agreement is valid and enforceable, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Nagrampa*, 469 F.3d at 1268 (quotations and citations omitted). A court must enforce an arbitration agreement when (1) a valid agreement to arbitrate exists, and (2) the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

In Nevada, a court may invalidate unconscionable arbitration provisions. *D.R. Horton,*

*Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004). In order to invalidate an arbitration provision, both procedural and substantive unconscionability must be present. *Id.* "A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract,[2] or because the clause and its effects are not readily ascertainable upon a review of the contract." *Id.* "Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *Id.* A party does "not have a duty to explain in detail each and every right that the [other party] would be waiving by agreeing to arbitration" to be enforceable, but "an arbitration clause must at least be conspicuous and clearly put [the other party] on notice that he or she is waiving important rights under Nevada law." *Id.* at 1164. Substantive unconscionability focuses on the one-sideness of the contract terms. *Id.* at 1162-63.

In this case, the arbitration clause is not procedurally unconscionable. First, as a matter of Nevada law, the employment agreement at issue is not an adhesion contract. *See Kindred*, 996 P.2d at 907 (holding that the adhesion contract doctrine has never been applied to employment cases). Second, the arbitration clause is in the same size font as all of the other provisions in the five-page employment agreement and is not buried in the contract. Third, the language in the arbitration clause clearly informs Plaintiff that "[a]ny dispute or claim involving this agreement shall be settled by arbitration" and that the "decision of the arbitrators shall be final and binding and shall be the exclusive remedy for any alleged breach of the employment relationship." (*See* Pl's Emp't Agreement (#15-1) at 4). Thus, the language informs any reasonable person that arbitration is the "exclusive remedy" to challenge the employment contract and that a jury trial is not an option. As such, the arbitration clause is not procedurally unconscionable. Because Plaintiff fails to demonstrate procedural unconscionability, the Court finds that the arbitration clause is valid.

---

[2] Under Nevada law, an adhesion contract is "a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain." *Kindred v. Second Judicial Dist. Ct.*, 996 P.2d 903, 907 (Nev. 2000).

7

With respect to the scope of the arbitration clause, "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Int'l Ass'n of Firefighters v. City of Las Vegas*, 929 P.2d 954, 957 (Nev. 1996). "Courts should order arbitration of particular grievances unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (citations and quotations omitted).

In this case, the arbitration clause applies to all claims involving "breach of the employment relationship." (*See* Pl's Emp't Agreement (#15-1) at 4). Because all of Plaintiff's claims arise out of the contractual, employment relationship all of her claims are arbitrable. Plaintiff's second claim for promissory estoppel based on FMLA benefits arise from the provision in the employment agreement that incorporates the Personnel Policy and Procedure Manual. (*See* Compl. (#8) at 11; Pl's Emp't Agreement (#15-1) at 2). Plaintiff alleges that the Manual provides FMLA rights. Therefore, Plaintiff's second claim is contractually based.

Plaintiff's third (breach of contract), fourth (breach of the implied covenants of good faith and fair dealing), fifth (breach of the implied covenants of good faith and fair dealing), eighth (intentional interference with contractual relations), ninth (intentional interference with prospective economic advantage), tenth (wrongful termination), eleventh (wrongful termination), twelfth (wrongful termination), and thirteenth (FCRA violations) claims are all based on the contractual employment relationship between the parties. As such, all of those claims are arbitrable.

Additionally, Plaintiff's sixth claim for defamation per se against Stitt is also based on the contractual employment relationship because Plaintiff bases her damages on the lost contract. Therefore, the sixth claim is arbitrable. Plaintiff's seventh claim for intentional infliction of emotional distress is based on the employment relationship between Defendants and herself, and, thus, is arbitrable. To the extent, that the Court has any doubts as to whether Plaintiff's sixth and seventh claims arise out of the contractual, employment relationship, the Court notes that pursuant to the American Arbitration Rules for Employment Arbitration, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including

any objections with respect to the existence, scope or validity of the arbitration agreement." Employment Arbitration Rules and Mediation Procedures, Rule 6 located at http://www.adr.org/si.asp?id=6450. As such, the Court will permit the arbitrator to determine whether those claims are within the scope of the arbitration agreement. Accordingly, all of Plaintiff's claims are arbitrable, and the Court grants Defendant's Motion to Compel Arbitration (#11).

**II.    Motion to Dismiss (#12)**

Defendants file a motion to dismiss the first claim for relief for interference with rights under the FMLA. (Mot. to Dismiss (#12) at 2, 4). Defendants argue that the claim should be dismissed because Plaintiff concedes that GBPCA is not a covered employer as defined by the FMLA. (*Id.* at 4).

Because Plaintiff dismissed this claim at oral argument, the Court denies this motion (#12) as moot.

**III.   Motion for a More Definite Statement (#13)**

Defendants argue that the Court should require Plaintiff to file an amended complaint listing the specific violations of the Fair Credit Reporting Act ("FCRA") in her thirteenth claim. (Mot. for Def. Statement (#13) at 5). Defendants assert that the FCRA is divided into twenty lettered subdivisions and that they need to know what subdivision Plaintiff is relying on. (*Id.*).

In response, Plaintiff states that no such order is necessary because she will clarify the claim in the response. (Resp. to Mot. (#15) at 4). Plaintiff states that her claims arise under 41 U.S.C. § 1681k (public record information for employment purposes) and 41 U.S.C. § 1681m (requirements on users of consumer reports). (*Id.*). Plaintiff also alleges damages pursuant to 41 U.S.C. §§ 1681n and 1681o. (*Id.*).

In reply, Defendants acknowledge that Plaintiff clarified her thirteenth claim but request that Plaintiff amend her complaint to include the provided clarification. (Rely to Mot. (#16) at 10).

The Court denies the motion (#13) for a more definite statement because Plaintiff clarified her claim in the response.

9

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Motion to Compel Arbitration (#11) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss (#12) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion for a More Definite Statement (#13) is DENIED.

For clarification purposes, the Court notes that Plaintiff voluntarily dismissed her first cause of action during oral argument and voluntarily clarified her thirteenth claim for Fair Credit Reporting Act ("FCRA") violations in her pleadings.  Pursuant to her clarification, Plaintiff's thirteenth cause of action alleges violations under 41 U.S.C. § 1681k (public record information for employment purposes) and 41 U.S.C. § 1681m (requirements on users of consumer reports).  (*Id.*).  Plaintiff also alleges damages pursuant to 41 U.S.C. §§ 1681n and 1681o.

DATED this 10th day of January, 2012.

_____
United States District Judge